UNITED STATES DISTRICT COURT
FOR THE RHODE ISLAND-DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| vs. | ) | CASE No: 1:02-CR-00020-011 |
| RAFAEL DE LOS SANTOS | ) | |
| Petitioner, | ) | |

MOTION PURSUANT TO TITLE 18 U.S.C. SECTION 3582 (c)(2) TO REDUCE/MODIFY SENTENCE PURSUANT AND BASED ON AMENDMENT 706 AS AMENDED BY 711 BY THE SENTENCING COMMISSION AND MADE RETROACTIVE EFFECTIVE MARCH 3, 2008

COMES NOW, RAFAEL DE LOS SANTOS, defendant Pro-Se, hereinafter ("De Los Santos"), and submits his petition to Reduce/Modify Sentence Based on Amendment 706 as Amended by 711 By The Sentencing Commission, hereinafter ("Commission") and made retroactive effective March 3, 2008.

## STATEMENT OF THE CASE

DE LOS SANTOS was indicted in the Rhode Island Division of conspiracy to distribute and possess with intent to distribute cocaine based (crack) (21 U.S.C. Section 846 and 841 (A)(1) & (b)(1)(A); distribution of Heroin Title 21 Sections 841 (A)(1) (B) (1)(C); posession with intent to distribute cocaine base (crack) (Title 21 § 841 (A)(1)& (B)(1)(A).

DE LOS SANTOS pleaded guilty on 2002. On July 17, 2002 DE LOS SANTOS was sentenced to 121 months of incarceration resulting from an adjusted total offense level of 32 at Category I. The original base offense level was 35 and a three level downward departure for DE LOS SANTOS's timely acceptance of responsability. Pursuant to Amendment 706 as Amended by 711, DE LOS SANTOS new adjusted offense lvel of 30 at category I, results in a new guideline range of 97-121 months. However, pursuant to Section 5G1.1 (c)(2), the range becomes 120-121 months DE LOS SANTOS is, therefore, eligible for a sentencing reduction.

## MEMORANDUM OF LAW

A sentencing court's authority to reopen, and if appropriate, reduce a sentence under Section 3582 (c)(2). **is triggered when the sentence was "based on a sentencing range that has subsequently been lowered by the Commission**

pursuant to" its power to review and revise the guidelines."

Once the authority to revisit the sentence has been triggered, the court still needs to ensure that the new sentence is consistent with the Sect. 3553 (a) factors. The Ninth Circuit in United States vs. Hicks, 472 F.3d 1167 (CA9 2005) held "because a mandatory system is no longer an open choice, district courts are necessarily endowed with the discretion to depart from the guidelines when issuing new sentences under Section 3582 (c)(2) (citing Booker vs. United States, 543 U.S. 220 (2005); United States vs. Jones, 2007 WL 2703122 (D.Kansas. Sept. 17, 2007); United States vs. Forty Estremera, 498 F.Supp.2d 468 (D.P.R. 2007). After Kimbrough vs. United States, 128 S.Ct. 558 (2007); Gall vs. United States, 128 S.Ct. 586 (2007) and Booker, this means that any statement on how courts should retroactively apply the crack amendments must be treated as advisory and the sentencing court must have the discretion to reject that advice.

While Section 3582 (c)(2) proceedings do not constitute full resentencings, their purpose is to give defendants a new sentence. This resentencing, while limited in certain respects, still results in the court calculating a new guideline range, considering Section 3553 (a) factors, and issuing a new sentence based on the guidelines. The dichotomy drawn, where full-resentencings are performed under an advisory system while "reduction proceedings" or

**"modifications", rely on a mandatory guidelines system, is false. Booker excised the statutes that made the guidelines mandatory and rejected the argument that the guidelines might remain mandatory in some cases and not in others.**

Regardless of whether Section 3582 (c)2) resentencings constitute full de novo sentencings, they clearly require the court to impose a sentence based upon its evaluation of the Section 3553 (a) factors, a process that cannot be circumscribed by a policy statement. The issue is analogous to pre-Booker cases in which courts held that once the authority to reduce a sentence under Section 3582 (c)(2) is triggered by a retroactive guideline, the sentencing court must consider all relevant statutory factors or criteria currently in existence, even if such criteria did not exist at the time of the original sentencing and is otherwise unrelated to the triggering amendment. Thus, defendants who were initially sentenced before Congress enacted Section 3553 (f)'s Safety Valve were able to benefit from that statute during a Section 3582 (c)(2) resentencing for an unrelated retroactive amendment. See: United States vs. Mihm, 134 F.3d 1353 (CA8 1998); United States vs. Reynolds, 111 F.3d 132 (CA6 1997); Settembrino vs. United States, 125 F. Supp.2d 511 (S.D. Fla. 2000).

A FORTUITOUS INCREASE IN THE SEVERITY OF A DEPORTABLE ALIEN'S SENTENCE WARRANTS CONSIDERATION OF A DOWNWARD DEPARTURES PURSUANT TO SECTION 3553 (a).

A downward departure based on DE LOS SANTO'S deportable alien's severity of confinement is lawful and authorized by statute, guideline and case law. United States vs. Smith, 27 F.3d 649 (CA D.C. 1994); United States vs. Farouil, 124 F.3d 838 (CA7 1997)(remanded after Koon, "we have no reason to believe that the guidelines have accounted for a defendant's status as a deportable alien"); See: also, United States vs. Guzman, 236 F.3d 830 (CA7 2001) (same)(collecting cases).

The issue presented by DE LOS SANTO'S case is whether unusually harsh collateral consequences that are visited by law on a defendant as a result of his conviction may provide a basis for mitigating the penal sanction that would otherwise be required by the guidelines. Collateral consequences are not part of DE LOS SANTO'S judgement of conviction and are not imposed on him for the purpose of punishing him. The effect of such consequences, however, are as punitive as his term of incarceration. This is particular true here where the collateral consequences is deportation and where a consequence of that consequence is a longer period of imprisonment under more severe conditions than would apply to a U.S. Citizen convicted of the same crime.

This extraordinary harsh and disparate nature of this penalty was acknowledged by the Supreme Court in Jordan vs. DeGeorge, 341 U.S. 223 (1951). Chief Justice Vinson explained:

> "We do this in view of the grave natur of deportation. The court has stated that' deportation is a drastic measure and at times the equivalent of banishment or exile... It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty'."

The threads that run through the majority and dissenting opinions in Jordan meet in DE LOS SANTO'S case. Unlike a citizen, however, DE LOS SANTOS who is convicted of such an offense must be deported. Accordingly, for the crime that he commited, DE LOS SANTOS will be punished with a lifetime of banishment in addition to the punishment which a citizen would suffer for the identical acts. Jordan vs. DeGeorge, 341 U.S. at 232.

Moreover, solely because of his status as a deportable alien, DE LOS SANTOS's sentence has been served under circumstances that are more severe than those facing a citizen under similar circumstances. Unlike citizens who commit the same offense, who are equally culpable and who receive the identical guideline sentence, DE LOS SANTOS will not be eligible to serve his sentence in a minimum security facility, nor a portion of the last 10% of his sentence in a half-way house or other community program including home confinement.

Unlike a citizen, DE LOS SANTOS cannot benefit from the 1-year 500 hour drug program (DAP) reduction of his sentence. DE LOS SANTOS ineligibility derives from the "Public Security Factor" that he received from the Bureau of Prisons. This designation is reserved for offenders with conviction for serious or repetitive crimes of violence, sex offenders whose current offense or history involves a significant threat to a government official.

Th PSF designation is not the last of the consequences that follow. On the very last day of his sentence, DE LOS SANTOS's will be transferred to BICE custody for further incarceration while he awaits deportation proceedings that should have been undertaken while he was sewing his prison sentence. See: Soler vs. Scott, 942 F.2d 597 (CA9 1991). In the present case, DE LOS SANTOS will serve a term of imprisonment, at BICE, that is, at least three (3) and probably as much as five (5) months longer than he would if he was not a deportable alien.

There is no question that national origin is a factor that is "not relevant in determining a sentence" U.S.S.G. Manual, Section 5H1.10, p.s. (Nov. 1991). But, the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his on her ancestors came. It is not synonymous with alienage. The Commission itself takes alienage as opposed to national origin into account in formulating certain guidelines. See:

U.S.S.G. Section 2L1.1 (b)(3). Section 3553 (a) provides that "courts shall impose a sentence suficient, but not greater than necessary, to comply with the purposes set forth in Paragraph 2 of this Subsection." 18 U.S.C. Section 3553 (a). From DE LOS SANTOS's standpoint, the sentence should not be too unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances.

Consequently, the formulation of a sentence that is not "unreasonably harsh" must take into account a penalty such as deportation that is visited upon DE LOS SANTOS by law as the result of his conviction. Moreover, if a sentence is to be imposed that does "not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under similar circumstances", in DE LOS SANTOS's case, it must necessarily be adjusted to reflect the harsher treatment DE LOS SANTOS has an had to suffer at the hands of the Bureau of Prisons and BICE, which is, in a sense, a collateral consequence of the penalty of deportation. See: United States vs. Lara, 905 F.2d 599 (CA2 1990) (downward departure justified where the "severity" of defendant's prison term is "exacerbated by his placement in solitary confinement as the only means of segregating him from other inmates".). Because the non-penal purpose of deportation is to ensure that defendants do no commit

additional crimes in the United States, Mahler vs. Ely, 264 U.S. 32 (1924), the collateral consequence itself furthers the purpose of "protecting the public from further crimes of the defendant."

The penalty of deportation, not to speak of the disparate treatment that DE LOS SANTOS's has received at the hands of the BOP and the disparate treatment at the hands of BICE based on factors unrelated to the crime he has committed, is perhaps the most severe and drastic collateral consequence that can result from his conviction. The Supreme Court's holding have been informed consistently by its recognition of deportation as a "penalty" of the most severe magnitude. Fiswick vs. United States, 329 U.S. 211 (1946); Fong Haw Tan vs. Phelan, 333 U.S. 6 (1933); Galvan vs. Press, 347 U.S. 522 (1953); Barber vs. Gonzalez, 347 U.S. 637 (1954); Gastelum-Quinones vs. Kennedy, 374 U.S. 469 (1963); Costello vs. INS, 376 U.S. 120 (1964).

## CONCLUSION

WHEREFORE, based on the foregoing facts and arguments hereinbefore presented, DE LOS SANTOS, defendant Pro-Se, prays this Honorable Court grant the relief requested by reducing his sentence from 121, once the authority to revisit the sentence has been triggered under new evaluation of the

section 3553 (a) relevant factors and petitioner's DE LOS SANTOS Pray that this Honorable District Court consider the Section 3553 (f)'s Safety Valve during resentencing proceeding and any other relief the court deems just and fair.

Respectfully Submitted,

On this 16th day of June, 2008

By:

RAFAEL DE LOS SANTOS
DEFENDANT PRO-SE
REG. No: 05142-070/K-03/205L
McRAE CORRECTIONAL FACILITY
P.O. DRAWER # 30
McRAE, GA 31055

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY, that a true and correct copy of the foregoing. Was mailed first class at McRae Correctional Facility mail room this 16th day of June, 2008.

U.S. ATTORNEY'S OFFICE
ROBERT CLARK CORRENTE, USA
FLEET CENTER
50 KENNEDY PLAZA, 8th FLOOR
PROVIDENCE, RI 02903

By:

RAFAEL DE LOS SANTOS
REG. No: 05142-070
McRAE CORRECTIONAL FACILITY
P.O. DRAWER # 30
McRAE, GA 31055